**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**VINCENTE ANTONIO MONROE,**

      **Plaintiff,**

v.                                                      **Case No. 8:14-cv-2380-T-23TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
                                              /

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be **affirmed.**

**I.**

Plaintiff applied for disability benefits in March 2012, alleging disability as of November 5, 2011, by reason of bulging discs, spinal deterioration, chronic back pain, numbness in hands, legs, and feet, and balance issues. (R. 157-60, 175-76). Plaintiff's application was denied originally and on reconsideration.

Plaintiff received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on January 24, 2013. (R. 35-65). He was forty-two (42) years of age at the time of the administrative hearing. Administrative filings indicate he stands six feet one inches tall

and weighed 195 pounds. (R. 176). Plaintiff has a eleventh grade education, and he reported past work as a truck driver, warehouse worker, laborer, and landscaper.

Plaintiff was represented at the hearing and testified that he stopped working November 4, 2011, due to an injury. He believes he is unable to do any work because of problems in his back, knees, legs, and hands. He was diagnosed with Guillain-Barre syndrome which causes him weakness all over. By his account, he can walk only half a block, he can climb only three steps before he has to stop, he can sit for ten to fifteen minutes and then has to move about, and he can lift only a gallon of milk. He uses a cane for balance and was prescribed a wheel-walker. Both hands are weak, and he cannot grip things tightly. Plaintiff indicated that his hands and fingers swell and are painful regularly. He cannot clinch a closed fist due to the swelling, nor can he grip things tightly. He can loosely hold a pencil. He has problems with bending and has poor balance. He no longer does any household chores. Surgery has not been recommended, and treatment has been by way of medications and physical therapy. He takes six different medications. He also has to do physical therapy to build up his leg strength. In sum, Plaintiff doubted he could do any work due to pain and weakness in his back, legs, knees, and hands and his inability to sit or stand for long. (R. 37-55, 61-63).

John Black, a vocational expert ("VE"), testified next. Pertinent to the decision, the VE testified on a hypothetical question assuming a person of Plaintiff's age, education, and work experience capable of sedentary exertional work, with a sit/stand option at will, with occasional postural limitations, the need for an assistive device for walking, and the need to avoid concentrated exposure to vibration and hazards, such as machinery and heights. With

such limitations, the VE testified that such person could perform the jobs of telephone solicitor, election clerk, and callout operator. With a frequent manipulative limitation or if fingering were limited to occasional, these jobs would remain available. (R. 55-61, 63-64).

Also before the ALJ were medical records, which are addressed herein as necessary.

By decision dated March 1, 2013, the ALJ determined that while Plaintiff has severe impairments related to probable Guillain-Barre syndrome, with neuropathy and parathesias of the lower extremities and acute chronic low back pain associated with neuropathy and parathesias of the lower extremities, degenerative disc disease, spondylosis of the lumbar spine, and spinal stenosis, he nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. On this conclusion, Plaintiff was determined to be not disabled. (R. 19-29).

The Appeals Council denied Plaintiff's request for review (R. 1-5), and the ALJ's decision became the final decision of the Commissioner.

**II.**

Entitlement to Social Security disability benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

3

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the listing of impairments; (4) if not, whether the claimant has the residual functional capacity (RFC) to perform his past relevant work; and (5) if not, whether, in light of the claimant's age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at §§ 404.1520(a)(4), 416.920(a)(4). The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations and citation omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

4

445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); 42 U.S.C. § 405(g).

## III.

Plaintiff, acting *pro se*, has submitted a "memorandum of law," a statement of "important facts," and a "challenge of administrative decision." (Docs. 17, 17-1, 17-2). Plaintiff maintains that the sum total of all his conditions render him disabled from any work;[1] the ALJ erred in discounting the evidence from his treating doctor, Dr. Ranon, as well as his own subjective complaints, which both show that he is disabled; the ALJ erred in relying on old outdated evidence; the evidence taken from Dr. Rajguru's notes related to the successful treatment of his "probable" Guillain-Barre syndrome was a lie or falsified and should not

---

[1] He cites chronic neck and back pain; numbness and tingling in his arms, hands, fingers, legs, and feet; and weakness in hands, back, and lower extremities; and painful swelling in his hands and fingers. The "statement of important facts" largely repeats the limitations caused by these conditions to which he testified at the hearing.

5

have been credited. And, he also maintains he has no transferable skills and, given his limited education, he is at a disadvantage to find any work even if he could work.

In response, the Commissioner urges that the ALJ fully reviewed the medical evidence and properly concluded that Plaintiff could perform a reduced range of sedentary work. Moreover, the ALJ properly assessed Dr. Ranon's opinions and discounted them based on that record and because they were inconsistent with his own treatment notes. As for his claims regarding Dr. Rajguru that the doctor falsified his treatment notes such that they should not have been relied upon by the ALJ, he fails to demonstrate such. Given the VE testimony, the Commissioner asserts the decision is supported by substantial evidence and consistent with applicable standards. (Doc. 18).

Upon careful review of the whole medical record, I am obliged to find that the ALJ's RFC assessment for a reduced range of sedentary work and his credibility decision are supported by substantial evidence. The RFC, coupled with the VE testimony, provides ample support for the decision that while Plaintiff has significant functional limitations he is not disabled from all work. The claim that the ALJ mishandled the opinion evidence from Dr. Ranon and erred in relying on the evidence from Dr. Rajguru is not supported.

In large part, Plaintiff's argument for disability relies upon the functional assessment rendered by primary care doctor Dr. Eric Ranon in January 2013. By his argument, that assessment was current and best assessed his abilities. He strongly and repeatedly criticizes the ALJ for any reliance on the evidence from an earlier treating source, Dr. Shailish Rajguru, which he labels false and a lie. His argument largely overlooks the objective and clinical

medical record that – from a fair reading of the decision – played a significant part in the ALJ's conclusion that Plaintiff's impairments were not as disabling as claimed.

A review of the medical evidence is useful. Plaintiff sought treatment in November 2011 for neck and back pain. (*See* R. 264-343). Dr. Charles C. Inman referred him to Winter Haven Hospital. (*See* R. 308). Hospital records show two admissions in November 2011 for back pain, which Plaintiff reported had worsened over the past two to three years. (R. 283-338). An MRI of the lumbar spine taken November 10, 2011, gave an impression for mild degenerative spondylosis predominantly at L4-5 and L5-S1. (R. 318-19). A MRI of the thoracic spine revealed only mild degenerative changes. (R. 320). Plaintiff underwent a neurosurgical evaluation by Dr. Matthew Burry who recommended supportive conservative treatment with analgesics and physical therapy. At that point, Plaintiff was discharged home and told not to work for seven days. (R. 306). According to this doctor, no surgical intervention was recommended. *Id.*

Dr. Rajguru, a neurologist who had seen Plaintiff on the first admission, ordered a second admission on November 21, 2011. Plaintiff again complained of chronic back pain and numbness.[2] He underwent a five day course of intravenous gamma globulin. At discharge, he was given the diagnosis of "probable" Guillain-Barre syndrome. His sensory and motor symptoms were reported to have resolved. He demonstrated 5/5 strength throughout and was ambulatory with assistance of a walker. He was discharged with a walker

---

[2] At the time this admission was ordered, physical findings by the doctor were essentially normal, although Plaintiff was complaining of ten days of paresthesias, numbness, and "ice cold" hands and feet. (R. 359-61).

7

for gait stability and instructed to undergo outpatient physical therapy for gait/balance training. (R. 286-87).

The ALJ accurately recounts follow-up appointments with Dr. Rajguru in December 2011 and January 2012. (R. 24). Per this neurologist's office notes, Plaintiff's symptoms were improved. (R. 386). Neurological examination was essentially normal apart from a "stocking impairment" of pinprick sensation in the ankles. *Id.* Dr. Rajguru again gave his impression for probable Guillain-Barre syndrome, which he stated had been successfully treated with intravenous gamma globulin. (R. 386-87). Follow-up notes also reflect that a nerve conduction study in December 2011 was normal. (R. 379). At a January 2012 appointment, Plaintiff declined medications and continued physical therapy was ordered. (R. 382-83). Due to continuing subjective complaints, cervical and thoracic MRI evaluations were recommended. (R. 383). A follow-up note in March 2012 reported that the thoracic MRI was normal, but the cervical MRI revealed areas of congenital and degenerative canal stenosis, and Plaintiff was referred back to Dr. Burry. (R. 350, 341-43).

Plaintiff began treatment with Dr. Ranon in May 2012. As noted by the ALJ, treatment for cervical and lumbar pain and neuropathy was conservative – by way of medications. Examination findings by this doctor routinely reflected cervical/lumbar tenderness and that Plaintiff walked with a cane, but little else. (*See* R. 403-04, 412-16, and 418-19). The doctor did prescribe a cane in August 2012. (R. 408). Treatment notes from late 2012 were essentially the same. (*See* R. 477-80). A December 2012 lumbar MRI ordered by Dr. Ranon revealed mild findings and was reported as a "Normal MRI of the lumbar spine." (R. 490).

8

Later in 2012, Plaintiff saw neurologist Dr. Thomas A. DiGeronimo. Between September and November 2012, Plaintiff raised similar complaints of pain, numbness, and tingling. (R. 465-76). While multiple treatment options were discussed at his initial appointment, Plaintiff opted to continue with conservative care. (R. 468-70). He evidenced reduced range of motion and reduced strength in his extremities, but otherwise normal neurological findings. *Id*. Dr. DiGeronimo ordered an arterial ultrasound of the lower extremities to evaluate the complaints of lower extremity pain and swelling. (R. 470). That ultrasound was "within normal limits." (R. 473). A laboratory work-up was also essentially normal. (R. 467, 471-72). The follow-up notes from this doctor reflect similar subjective complaints of "atypical" back pain and paresthesias, which was not improved by the medications. Findings by the doctor were also the same. Medications were adjusted but treatment remained conservative by Plaintiff's choice. (R. 465-67, 474-76).

As for the medical opinion evidence, there was an assessment by a nonexamining doctor who found Plaintiff capable of light exertional work (R. 74-82) and an assessment by Dr. Ranon (R. 491-95).

By Dr. Ranon's RFC assessment, Plaintiff was capable of performing less than a full range of sedentary level work.[3] In addressing this opinion evidence, the ALJ recognized that Dr. Ranon was a treating doctor, but he discounted the opinion because it was inconsistent

---

[3] By his assessment, Plaintiff was capable of only occasionally lifting/carrying less than ten pounds; he could stand/walk either less than one hour in a day or for less than two hours in an eight-hour workday; he could sit for less than six hours in an eight-hour workday; he was incapable of climbing, balancing, kneeling, crouching, crawling or stooping and was limited to frequently reaching, handling, fingering, and feeling; and had environmental limitations to some unspecified degree. (R. 491-94).

with Dr. Ranon's own records and unsupported by the other clinical, objective, and laboratory records. In particular, the ALJ cited the MRI findings reflecting mild impairment, the normal nerve conduction and electromyography studies, and the normal arterial ultrasound of the lower extremities. He also cited Dr. Rajguru's diagnosis of *probable* Guillain-Barre syndrome and notes reflecting successful treatment of the same with the five-day course of intravenous gamma globulin. (R. 26).

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997)). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Winschel,* 631 F.3d at 1179 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

Here, I conclude that the ALJ's finding that Dr. Ranon's opinion was unsupported by the clinical, objective, and laboratory records reflects the ALJ's accurate consideration of the records and his reasonable conclusion that such record did not support all the limitations imposed. By my consideration, the conclusion is supported by substantial evidence and states adequate good cause.

My review of this record indicates that the clinical findings of the examining and treating doctors, including Dr. Ranon, are on the whole relatively mild. The clinical findings coupled with the conservative care and recommendation for no surgical intervention allow for

the conclusion that Plaintiff's impairments were not disabling from all work. Moreover, the objective findings on MRI, the normal nerve conduction study and needle electromyography, and normal lower extremity ultrasound support the conclusion for relatively mild impairments and offer a substantial basis for the ALJ's rejection of the extreme limitations assessed by Dr. Ranon.[4]

Additionally, as noted by the ALJ, the records from Dr. Rajguru allowed for the conclusion that Plaintiff's condition (by whatever name) responded well to treatment. Plaintiff's allegation that the doctor lied in his notes is not established. While Plaintiff disagrees with the ALJ's conclusion for "probable" Guillain-Barre syndrome, such is precisely the conclusion of Dr. Rajguru and his care reflected consideration of such diagnosis. Moreover, Dr. Rajguru also noted that Plaintiff's symptoms were largely resolved after the five-day course of intravenous gamma globulin. In any event, whether the doctor told Plaintiff he had Guillain-Barre syndrome or he described it as "possible" or "probable" is of no real consequence because the diagnosis itself says nothing about the severity of the condition. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The mere existence of such impairment does not reveal the extent to which it limits Plaintiff's ability to

---

[4]The purported internal inconsistency within Dr. Ranon's assessment is not well-articulated by the ALJ. It may relate to the slightly confusing notation in his RFC assessment that Plaintiff could stand and/or walk for less than one hour in the workday and his checkmark indicating he could do so for less than two hours in the workday. It may relate to the doctor's office notes that do not set forth such significant degree of limitations as assessed. In any event, the other medical evidence cited by the ALJ provides more than adequate good cause for discounting this treating doctor's assessment.

11

work, and the balance of this and other doctors' reports suggest the impairment did not disable Plaintiff from all work.[5]

In sum, I find no error in the ALJ's handling of the medical opinion of Dr. Ranon, nor in his handling of the evidence from Dr. Rajguru.

For similar reasons, I find no error in the ALJ's conclusion that Plaintiff's subjective complaints were overstated. First, the decision reflects the subjective pain complaints were considered consistent with the Eleventh Circuit "pain standard."[6] Second, as noted above, the ALJ's review of the medical record appears thorough and accurate and the record, considered in full, does not support Plaintiff's claims as to the severity, frequency, and limiting effects of his symptoms. The ALJ's conclusion was that Plaintiff had some limitations from his

---

[5]To the extent Plaintiff urges this is outdated evidence that deserved little consideration, he is incorrect. The diagnosis continued to appear in the records through Dr. DiGeronimo's care in the fall of 2012, shortly before the administrative hearing. In any event, Plaintiff claimed disability as of November 2012, and the ALJ was required to consider the whole of the pertinent medical evidence, including that from Dr. Rajguru.

[6]In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

impairments that would limit him to only certain types of work activity, but would not preclude all work. (R. 27). Speaking to his subjective complaints, the ALJ stated:

> Significantly, despite the claimant's complaints of allegedly disabling impairments and associated symptoms, including chronic pain and bilateral upper and lower extremity weakness, the objective clinical studies and diagnostic testing have generally revealed no more than mild-to-moderate findings (Section F). However, the undersigned has afforded the claimant some benefit of doubt with regard to his subjective complaints. Therefore, after careful consideration of the entire record, and in order to resolve every benefit of doubt in the claimant's favor, the undersigned has made the appropriate accommodations in determining the claimant's [RFC] assessment....

(R. 27).

In short, Plaintiff fails to demonstrate from this medical record that the ALJ's conclusion is not supported by substantial evidence. As indicated above, my review of the that the medical record finds that it supports both the RFC assessment and the determination that Plaintiff overstates his symptoms when he claims he can do no work at all. Accepting that the ALJ properly discounted Dr. Ranon's assessment to the extent that it suggested Plaintiff was too limited to perform any type work, the record otherwise can be read to support this credibility decision also.

Finally, Plaintiff urges that he has no transferable skills and, given his limited education and past work, he is at a disadvantage to find any work even if he were capable. While such assertion my well be correct, I find no error in the ALJ's reliance on the vocational expert testimony to conclude that numerous sedentary exertional jobs existed in the local and national economy that Plaintiff could perform.

As the decision reflects, given Plaintiff's age, education, and past work, transferability of job skills was not material to the decision because, using the Medical-

13

Vocational Guidelines ("the Grids") as a framework for decision, a finding of not disabled is suggested whether he has transferable skills or not.[7] (R. 27-28). Moreover, were the Grids controlling, a conclusion that Plaintiff was not disabled would be dictated. Here, the ALJ properly recognized that the Grids provided guidance only. And, employing a vocational expert to assist, the ALJ came to the conclusion that numerous jobs were available and could be performed by Plaintiff. I find the conclusion consistent with the applicable standards and the VE testimony and supportive of the conclusion that Plaintiff was not disabled from all work. Plaintiff simply fails to demonstrate otherwise on this appeal.

**IV.**

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I **RECOMMEND** that it be **AFFIRMED.** I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

                                                Respectfully submitted this
                                                21st day of June 2016.

                                                THOMAS B. McCOUN III
                                                UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an

---

[7] This conclusion is consistent with Grid rules 201.24 and 201.25.

14

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record
*Pro se* Plaintiff